## OZARK PIPE LINE CORPORATION *v.* MONIER ET AL., CONSTITUTING THE STATE TAX COMMISSION OF THE STATE OF MISSOURI, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI

No. 181. Argued November 26, 1924.—Decided January 12, 1925.

1. A Missouri statute requires every corporation not organized under the laws of that State but engaged in business therein to pay an annual franchise tax equal to one-tenth of 1% of the par value of its capital stock and surplus employed in business in the State. Rev. Stats. 1919, §§ 9836–9848. *Held,* that the tax is one upon the privilege or right to do business. P. 562.

2. Such a tax cannot constitutionally be exacted of a foreign corporation whose business in the taxing State consists exclusively in the operation of a pipe line for transporting petroleum through the State in interstate commerce, and in ownership of property, maintenance of its principal office, purchase of supplies, employment of labor, maintenance and operation of telephone and telegraph lines and automobiles, and other acts within the State, all exclusively for the furtherance of such interstate commerce, and constituting the means and instruments by which it is conducted. P. 563.

---

[6] *Taylor* v. *McGregor State Bank,* 144 Minn. 249; *Wood* v. *Vogel,* 204 Ala. 692; *Bell* v. *Buffinton,* 244 Mass. 294.

3. The facts that a foreign corporation whose business in a State is entirely interstate commerce is incorporated for local business also, and has applied for and received a local license conferring power to exercise the right of eminent domain, do not empower the State to tax its right to carry on the interstate business. P. 566.

Reversed.

APPEAL from a decree of the District Court which dismissed the appellant corporation's bill in a suit to enjoin the appellees,—officials of Missouri—from taking proceedings for the revocation of its license to do business in Missouri and for making the amount of an annual franchise tax, with penalties, damages and interest, a lien upon its property in that State.

*Mr. Truman Post Young,* with whom *Mr. Kent Koerner, Mr. William F. Fahey* and *Mr. John M. Carroll* were on the briefs, for appellant.

I. The Missouri franchise tax is a tax upon the privilege of doing business. *Marquette Hotel Co. v. State Tax Comm.,* 282 Mo. 213.

II. The maintenance of the office in St. Louis for the purposes shown in the evidence did not constitute doing an intrastate business within the State which would be subject to taxation, nor did the maintenance of the pipe line nor the other activities described in the evidence. All of these activities centered around the interstate business of the company. *Cheney Bros. Co. v. Massachusetts,* 246 U. S. 147; *Norfolk, etc., R. R. Co. v. Pennsylvania,* 136 U. S. 114; *Gloucester Ferry Co. v. Pennsylvania,* 114 U. S. 196; *Philadelphia S. S. Co. v. Pennsylvania,* 122 U. S. 326; *McCall v. California,* 136 U. S. 104; *Pembina Mining Co. v. Pennsylvania,* 125 U. S. 181.

III. The powers granted to the company in its original Maryland charter are not decisive of the question as to what, if any, business the corporation does within the State of Missouri. That question is a question of fact and not of charter powers.

It is obvious that a State cannot tax a foreign corporation for doing business within the State merely because it has the charter power to do so.

IV. The fact that the company obtained a license to do business in Missouri does not indicate that the company was doing an intrastate business. *Norfolk, etc. R. R. Co.* v. *Pennsylvania,* 136 U. S. 114.

Even if the corporation had been originally incorporated in Missouri, it would not be subject to a tax upon interstate commerce. *Philadelphia S. S. Co.* v. *Pennsylvania,* 122 U. S. 326.

V. No State may levy a franchise or excise tax upon a company doing solely an interstate business in, through or across the State. The transportation of oil from one State to another is interstate commerce. *Eureka Pipe Line Co.* v. *Hallanan,* 257 U. S. 265; *United Fuel Gas Co.* v. *Hallanan,* 257 U. S. 277; *Kansas City, etc. Ry. Co.* v. *Botkin,* 240 U. S. 227; *Leloup* v. *Port of Mobile,* 127 U. S. 640.

VI. Even where a corporation is doing both interstate and intrastate business, a tax so levied as to include or compel the payment of a tax upon the interstate business will be void. *Oklahoma* v. *Wells, Fargo & Co.,* 223 U. S. 298; *Pullman Co.* v. *Kansas,* 216 U. S. 56; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292; *Looney* v. *Crane Co.,* 245 U. S. 178; *Ludwig* v. *Western Union Tel. Co.,* 216 U. S. 146; *Locomobile Co.* v. *Massachusetts,* 246 U. S. 146.

VII. This case does not come within the principle of those cases upholding taxes, in form privilege taxes but in substance and effect general property taxes, *Postal Telegraph-Cable Co.* v. *Adams,* 155 U. S. 688; nor within those holding that where the tax is a tax upon intrastate commerce the mere fact that the method of computation

requires reference to interstate business will not render it invalid. *Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290.

*Mr. Jesse W. Barrett,* Attorney General of the State of Missouri, and *Mr. J. Henry Caruthers* for appellees.

I. Interstate commerce is a "practical conception," and the tax in question to be valid must not, in its practical effect and operation, burden interstate commerce. *Eureka Pipe Line Co.* v. *Hallanan,* 257 U. S. 265; *Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290; *St. Louis S. W. Ry. Co.* v. *Arkansas,* 235 U. S. 350.

II. Corporations doing both interstate and intrastate commerce may be required to pay a franchise or excise tax.

While a State may not use its taxing power to regulate or burden interstate commerce, it is settled that a state excise tax which affects such commerce only indirectly and remotely, may be entirely valid, where it is clear that it is not imposed with the covert purpose or with the effect of defeating federal constitutional rights. *Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290; *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217; *U. S. Express Co.* v. *Minnesota,* 223 U. S. 335; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68; *Kansas City, etc. R. R. Co.* v. *Stiles,* 242 U. S. 111; *Kansas City, etc. Ry. Co.* v. *Kansas,* 240 U. S. 227; *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321; *Schwab* v. *Richardson,* 263 U. S. 88.

III. The Missouri Franchise Tax Act has been held by this Court not to be a burden on interstate commerce. *St. Louis-San Francisco Ry. Co.* v. *Middlekamp,* 256 U. S. 226.

IV. What is "doing business" by a foreign corporation in a State other than that of its incorporation? The answer to this question constitutes the sole controversy presented here.

The evidence shows, and the trial court found, that the plaintiff maintains its principal office in Missouri, in the City of St. Louis, where it keeps its stock certificate books, books of account, financial reports, bank accounts, pays all the employees, both within and without the State, purchases supplies within the State, employs labor within the State, maintains and operates telephone and telegraph lines and purchases supplies and equipment therefor in this State; and acquires rights-of-way both by purchase and condemnation under its right of eminent domain granted to it by the State. It is constantly entering into and executing contracts for the transportation of crude oil, and of employment and purchases, and has frequent damage cases by reason of broken and leaking pipe lines which result in overflowing and damaging the lands adjacent thereto. Settlements and adjustments of such damages are effected both in and out of the courts of this State. Material and labor are assembled at the broken points and repairs made.

The vice-president, secretary, treasurer and other officers maintain their offices and headquarters in their offices in St. Louis, where telephones are maintained, and the name of the company appears on the doors of said offices. Stockholders and directors meetings are held there. All certificates for the receipt of oil for transportation are sent to the St. Louis office where the revenue for said transportation is figured and entered of record. The tariff rates are also kept there and, in fact, the entire business of the corporation is managed and directed from the St. Louis office.

The court remarked that these facts were not traversed and were not susceptible of contradiction in any substantial particular.

In view of the foregoing evidence and finding of facts and the following decisions, appellees contend that the

decree of the lower court should be affirmed. *Cheney Bros. Co.* v. *Massachusetts,* 246 U. S. 147; *Knights Templars' Indemnity Co.* v. *Jarman,* 187 U. S. 197; *Horn Mining Co.* v. *New York,* 143 U. S. 305; *Board of Trade* v. *Hammond Elevator Co.,* 198 U. S. 424; *Diamond Glue Co.* v. *U. S. Glue Co.,* 187 U. S. 611; *Connecticut Life Ins. Co.* v. *Spratley,* 172 U. S. 602; *Mutual Reserve Ins. Co.* v. *Birch,* 200 U. S. 612.

V. A finding of fact by a chancellor, who heard the witnesses, will not be reversed, except in a clear case.

VI. The burden of proof rests upon appellant. *Maxwell Land Co.* v. *Dawson,* 151 U. S. 586.

Mr. Justice Sutherland delivered the opinion of the Court.

Appellant is a Maryland corporation. It owns and operates a pipe line extending from within Oklahoma through Missouri to a point in Illinois, together with certain gathering lines in Oklahoma. Through this line crude petroleum is conducted to Illinois and there delivered. Oil is neither received nor delivered in the State of Missouri. Since it began operations appellant has been assessed and has paid general property taxes upon that portion of its line, and upon its other assets, in Missouri. It maintains its principal office in Missouri where it keeps its books and bank accounts and from which it pays its employees within and without the State, purchases supplies, employs labor, maintains telephone and telegraph lines, enters into contracts for transportation of crude oil, and carries on various other activities connected with and in furtherance of its pipe line operations. Along the pipe line in Missouri there are three pumping stations the sole use of which is to accelerate the passage of the oil through the line. It owns and operates passenger and truck automobiles, but these as well as its other property in Missouri are used exclusively in the

prosecution of its interstate business. In compliance with the laws of Missouri applicable to corporations formed in other States desirous of transacting business in Missouri, appellant filed with the Secretary of State its articles of incorporation, and amended articles showing an increase in its capital stock, paid license taxes aggregating $6,401.50, and obtained a license and authority to engage " exclusively in the business of transporting crude petroleum by pipe line." It thereby acquired the right of eminent domain under the laws of the State.

The controversy arises over an attempt on the part of the State authorities to collect from appellant an annual franchise tax under §§ 9836–9848, Rev. Stats. Mo. 1919, pp. 3015–3020. The statute requires every corporation not organized under the laws of Missouri but engaged in business therein, to pay an annual franchise tax equal to one-tenth of one per cent. of the par value of its capital stock and surplus employed in business in the State. For the purpose of the tax the corporation is deemed to have employed in the State " that proportion of its entire capital stock and surplus that its property and assets in this State bears to all its property and assets wherever located." The corporation is required to make an annual report in writing to the State Tax Commission in such form as may be prescribed, giving the amount of its authorized and subscribed capital stock, the par value and market value thereof and other specified information, as a basis, with other things, for the computation of the tax. Appellant, having failed to furnish this report, was threatened by appellees with an action in the name of the State to revoke its license and with such proceedings as would cause the amount of the tax, together with penalties, damages, and interest, to become a lien upon its property and thereby create a serious cloud upon the title thereto. Upon these facts suit was brought to enjoin appellees from going forward

with such action and proceedings, upon the ground that the statute, as applied to appellant, contravenes the commerce clause of the Constitution of the United States. After a hearing the court below rendered a final decree against appellant dismissing its bill.

The tax is one upon the privilege or right to do business, *State ex rel.* v. *State Tax Commission,* 282 Mo. 213, 234; and if appellant is engaged only in interstate commerce it is conceded, as it must be, that the tax, so far as appellant is concerned, constitutionally cannot be imposed. It long has been settled that a State cannot lay a tax on interstate commerce in any form, whether on the transportation of subjects of commerce, the receipts derived therefrom, or the occupation or business of carrying it on. *Leloup* v. *Port of Mobile,* 127 U. S. 640, 648; *Kansas City Ry. Co.* v. *Kansas,* 240 U. S. 227, 231, and cases cited. Plainly, the operation of appellant's pipe line is interstate commerce and beyond the power of State taxation. *Eureka Pipe Line Co.* v. *Hallanan,* 257 U. S. 265, 272; *United Fuel Gas. Co.* v. *Hallanan,* 257 U. S. 277. But the contention in justification of the tax is that appellant is also engaged in doing local business, the basis of such contention being the facts concerning its ownership and use of property, other than the pipe line, and its various acts and activities within the State hereinbefore recited; and, further, that the purposes for which it is incorporated, as declared in its articles, comprehend other activities than that of transporting petroleum, namely, the acquisition and operation of telegraph and telephone lines, dealing in and transporting merchandise, etc.

An extended review of the decisions of this Court dealing with this phase of the subject is not necessary. All proceed from the same principles, but range themselves on one side or the other of the line as the facts do or do not demonstrate that the tax as a practical matter con-

stitutes a burden upon interstate commerce. The facts upon which these former decisions rest, therefore, must be borne in mind in applying them to other and alleged similar cases. If the business taxed is in fact separate local business, not so connected with interstate commerce as to render the tax a burden upon such commerce, the tax is good. An illustration of such a tax is found in *Pennsylvania R. R. Co.* v. *Knight,* 192 U. S. 21, where this Court upheld a state franchise tax upon a cab service maintained wholly within the State of New York by the railroad company to convey passengers to and from its terminus in New York City, for which service the charges were separate from other transportation charges. The principle announced (p. 27) was: " Wherever a separation in fact exists between transportation service wholly within the State and that between the States a like separation may be recognized between the control of the State and that of the Nation. *Osborne* v. *Florida,* 164 U. S. 650; *Pullman Co.* v. *Adams,* 189 U. S. 420." On the other hand, in *Norfolk, etc. R. R. Co.* v. *Pennsylvania,* 136 U. S. 114, 120, a Pennsylvania tax of similar character sought to be imposed upon a Virginia railroad corporation was held bad. The railroad company maintained an office in Pennsylvania for the use of its officers, stockholders, agents and employees and expended large sums of money in that State in the purchase of materials and supplies for its railroad. It owned a small amount of property in the State. In holding that the tax contravened the commerce clause the Court said:

" Was the tax assessed against the company for keeping an office in Philadelphia, for the use of its officers, stockholders, agents and employés, a tax upon the business of the company? In other words, was such tax a tax upon any of the *means* or *instruments* by which the company was enabled to carry on its business of interstate commerce? We have no hesitancy in answering

that question in the affirmative. What was the purpose of the company in establishing an office in the city of Philadelphia? Manifestly for the furtherance of its business interests in the matter of its commercial relations. . . . Again, the plaintiff in error does not exercise, or seek to exercise, in Pennsylvania any privilege or franchise not immediately connected with interstate commerce and required for the purposes thereof. Before establishing its office in Philadelphia it obtained from the secretary of the Commonwealth the certificate required by the act of the State legislature of 1874 enabling it to maintain an office in the State. That office was maintained because of the necessities of the interstate business of the company, and for no other purpose. A tax upon it was, therefore, a tax upon one of the means or instrumentalities of the company's interstate commerce; and as such was in violation of the commercial clause of the Constitution of the United States."

*Heyman* v. *Hays,* 236 U. S. 178, 185–186, involved a county privilege tax for carrying on a liquor business. The complainant was a liquor merchant who sold no liquor directly or indirectly within the State but conducted a mail order business with persons in other States exclusively. The effort to sustain the tax was upon the grounds that complainant had a stock of goods within the State susceptible of being sold therein, that care and attention for the purpose of packing and otherwise must necessarily be given these goods, that orders for shipment were received in the State, and that a clerical force or other assistance was maintained within the State to keep accounts, supervise the business, receive the price resulting from shipments, and so on. This Court said that assuming these facts they did not take the business out of the protection of the commerce clause (p. 186): "We reach this conclusion because we are of opinion that giving the fullest effect to the conditions stated they

were but the performance of acts accessory to and inhering in the right to make the interstate commerce shipments and therefore to admit the power because of their existence to burden the right to ship in interstate commerce would necessarily be to recognize the authority to directly burden such right."

The present case comes within the reasoning of the two decisions last cited. The business actually carried on by appellant was exclusively in interstate commerce. The maintenance of an office, the purchase of supplies, employment of labor, maintenance and operation of telephone and telegraph lines and automobiles, and appellant's other acts within the State, were all exclusively in furtherance of its interstate business; and the property itself, however extensive or of whatever character, was likewise devoted only to that end. They were the means and instrumentalities by which that business was done and in no proper sense constituted, or contributed to, the doing of a local business. The protection against imposition of burdens upon interstate commerce is practical and substantial and extends to whatever is necessary to the complete enjoyment of the right protected. *Heyman* v. *Hays, supra,* p. 186.

The court below grounded its decision chiefly upon *Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147; but a review of that case will clearly demonstrate that it cannot be given the effect thus ascribed to it. Seven foreign corporations sought to avoid a Massachusetts excise tax on the ground, among others, that, as imposed, it contravened the commerce clause of the Constitution. This Court held the tax invalid as to one of the corporations and sustained it as to the other six. The first of the six kept a stock of machine parts in the State which were sold both within and without the State, and the court simply held that the portion of the business which was purely local was subject to local taxation. The

second did an extensive local business in repairing cars of its own make and in selling second-hand cars. The third employed salesmen who took orders for its product from local retailers and turned them over to be filled by the nearest wholesaler, and this amounted, as the Court said, simply to one local merchant buying from another. The fourth and fifth were mining companies operating mines in Michigan with offices in Boston where their directors met, declared and paid dividends, etc. Interstate commerce was not affected. Indeed, it does not affirmatively appear that there was any such commerce to be affected. In the case of the sixth the commerce clause was not involved. The remaining case, (*Cheney Bros. Co.*), in which the tax was held bad, was that of a Connecticut corporation engaged in manufacturing and selling silk fabrics. It maintained in Boston a selling office with an office salesman and four traveling salesmen who solicited and took orders subject to approval by the home office from which shipments were made directly to the purchasers. The Court held that this did not constitute doing a local business, and said (p. 153): " The maintenance of the Boston office and the display therein of a supply of samples are in furtherance of the company's interstate business and have no other purpose. Like the employment of the salesmen, they are among the means by which that business is carried on and share its immunity from State taxation." It will thus be seen that there is nothing in this decision upon which the decree under review can properly rest. Its effect is entirely the other way.

Some stress is laid upon the fact that the objects and purposes specified in appellant's articles of incorporation are not confined to the transportation of petroleum but include the doing of other business local in character. As to this, it is enough to say that none of these powers were in fact exercised in the State of Missouri; and so

far as this case is concerned the power to tax depends upon what was done and not upon what might have been done. Moreover, the license issued by the State author-ized appellant to engage "exclusively in the business of transporting crude petroleum by pipe line."

Nor is it material that appellant applied for and received a Missouri license or that it had the power thereunder to exercise the right of eminent domain. These facts could not have the effect of conferring upon the State an authority, denied by the Federal Constitution, to regulate interstate commerce. The State has no such power even in the case of domestic corporations. See *Philadelphia S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, 342. The statute as applied to appellant is unconstitutional.

*Reversed.*

MR. JUSTICE BRANDEIS, dissenting.

The Court assumes, without discussion, that if, in Missouri, the company is engaged exclusively in interstate commerce, the tax assessed upon the Ozark Company is bad. It concludes, upon discussion, that the business actually done by the company within that State is exclusively interstate commerce, because the article with which it deals is not produced within Missouri and the physical operations of the company within the State relate directly or indirectly to transporting the article through it. Under the rule applied, every tax laid by any State upon the corporate franchise (properly so-called) of every corporation, domestic or foreign, must be void, in the absence of congressional authorization, where the corporation is actually engaged exclusively in what is deemed interstate commerce. I find in the Constitution no warrant for the assumption which leads to such a result.

The tax assailed is not laid upon the occupation, as was that in *Texas Transport & Terminal Co.* v. *New*

*Orleans,* 264 U. S. 150. Nor is the tax laid upon the privilege of doing business. It is laid upon the privilege of carrying on business in corporate form; of doing so with a usual place of business within the State, and with power to exercise for that purpose the right of eminent domain. The office within the State is the corporation's main office. The property physically located within the State constitutes more than half of all its property. The operations actually performed within the State include, among others, mechanical operations indispensable to the conduct of the business, and extensive auxiliary activities. The business which the company sought and obtained leave to do in corporate form is intrastate or interstate or both. The broad powers sought and granted, it still possesses and seeks to retain.

The immunity from state taxation accorded is not that enjoyed by federal instrumentalities in the absence of legislation by Congress authorizing such taxation. See *Thompson* v. *Pacific Railroad,* 9 Wall. 579. It is not the immunity of a federal corporate franchise, as in *California* v. *Central Pacific R. R. Co.,* 127 U. S. 1, 42. It has not the support of congressional action. The tax is held void solely on the ground that it is obnoxious to the Commerce Clause. A state tax is obnoxious to that provision of the Federal Constitution only if it directly burdens interstate commerce, or (where the burden is indirect) if it obstructs or discriminates against such commerce. Here, there is no contention that, in fact, the tax assessed either obstructs, or appreciably burdens, interstate commerce. The tax is trifling in amount.[1]

---

[1] It is now one-twentieth of one per cent. of that fraction of the whole capital stock and surplus which is proportionate to the fraction in value of the total assets of the corporation which are located within the State. The question of a limit upon the amount of the tax discussed in *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 87, and *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, 140, is not material here.

There is no contention that, in fact, the tax discriminates against interstate commerce. The tax is applied alike whether the business done is interstate, or intrastate, or both.[2] There is no contention that the statute discriminates against corporations organized under the laws of other States. The tax is the same for domestic corporations as it is for foreign corporations. The citizenship of the corporation is confessedly not of legal significance in this connection.[3]

Can it be said that this tax directly burdens interstate commerce? A tax is a direct burden, if laid upon the operation or act of interstate commerce. Thus, a tax is a direct burden where it is upon property moving in interstate commerce, *Champlain Realty Co.* v. *Brattleboro,* 260 U. S. 366; *Eureka Pipe Line Co.* v. *Hallanan,* 257 U. S. 265; *United Fuel Gas Co.* v. *Hallanan,* 257 U. S. 277; or where, like a gross-receipts tax, it lays a burden upon every transaction in such commerce, *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 297. But a tax is not a direct burden merely because it is laid upon an indispensable instrumentality of such commerce, or because it arises exclusively from transactions in interstate commerce. Thus, a tax is valid although imposed upon property used exclusively in interstate commerce, *Transportation Co.* v. *Wheeling,* 99 U. S. 273, 284; *Old Dominion S. S. Co.* v. *Virginia,* 198 U. S. 299, 306; or, although laid upon net-income derived exclusively from interstate commerce, *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321; *Shaffer* v. *Carter,* 252 U. S. 37, 57. Compare *Peck & Co.* v. *Lowe,* 247 U. S. 165; *Wagner* v.

---

[2] If the tax assessed is held void, the statute will, in fact, discriminate against intrastate commerce; for the tax is confessedly valid as applied to all corporations which do not engage exclusively in interstate commerce.

[3] It applies also to corporations organized under the laws of a foreign country.

*City of Covington,* 251 U. S. 95. These taxes were held valid because, unlike a gross-receipts tax, they do not withhold, " for the use of the State, a part of every dollar received in such transactions." See 245 U. S., p. 297. Surely the tax upon the corporate franchise is as indirect as the tax upon the pipe-line.

I find in the Commerce clause no warrant for thus putting a State to the choice of either abandoning the corporate franchise tax or discriminating against intrastate commerce;[4] nor for denying to a State the right to encourage the conduct of business by natural persons through imposing, for the enjoyment of the corporate privilege, an annual tax so small that it cannot conceivably be deemed an obstruction of interstate commerce.

1. A state law imposing upon all persons engaged in transportation for hire by motor vehicle over the public highways of the State the burdens and duties of common carriers, and requiring them to furnish indemnity bonds to secure payment of claims and liabilities resulting from injury to property carried, when applied to a private carrier without special franchise or power of eminent domain and engaged exclusively in hauling from a place within the State to a place in another State the goods of particular factories under standing contracts with their owners, violates the Commerce Clause, by taking from the carrier use of instruments by means of which he carries on interstate commerce, and by imposing on him

---

[4] See the discussion of *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, by Thomas Reed Powell, 32 Harv. Law Rev. 251, 261-2.