# Portland Pipe Line Corp. v. Leonard W. Morrison, Commissioner of Taxes

[110 A2d 700]

November Term, 1954.

Present: **Sherburne, C. J., Jeffords, Cleary and Chase, JJ., and Sylvester, Supr. J.**

Opinion Filed January 4, 1955.

*Witters, Longmoore & Akley* and *Hutchinson, Pierce, Atwood & Scribner* (of Portland, Maine) for the petitioner.

*F. Elliott Barber, Jr.,* Attorney General and *Robert T. Stafford,* Deputy Attroney General, for the petitionee.

**Chase, J.** These cases originated before the commissioner of taxes under V. S. 47, §873, to obtain a revision of taxes assessed under V. S. 47, §§949-951 inclusive. Relief was denied and the petitioner appealed to the Washington County Court under V. S. 47, §947. To the petitions the petitionee demurred; the demurrers were sustained pro forma; the petitioner excepted, and the causes passed to this Court.

The petitions show these facts which are admitted by the demurrers. The petitioner is a Maine corporation, with its principal office in Portland, Maine. It owns a pipe line for the transportation of oil from Maine through the States of New Hampshire and Vermont to the Province of Quebec, Canada. It has no offices in Vermont. It has never made any sales in Vermont. It has never made any charge for services performed in Vermont. It owned a pumping station in Sutton, Vermont, until 1952. It operated this pumping station until 1950, to accelerate the flow of oil through its pipe line. It has never paid any wages, salaries or other personal compensation to employees within Vermont except the crew at the pumping station and a small crew of temporary employees engaged in 1952 in cleanup work along its pipe lines, resulting from a break in one of the lines. It has paid all town and school district taxes assessed during the years 1948-1952 inclusive. It has been qualified since Janurary 1, 1947, to do business in Vermont. It has been assessed and has paid under protest franchise taxes for the years 1942-1948 inclusive in the aggregate amount of $14,435.14.

The franchise taxes for the years 1942-1948 inclusive paid under protest by the petitioner were assessed pursuant to V. S. 47, §950 which is as follows:

> "For the privilege of exercising its franchise in this state in a corporate or organized capacity, every domestic corporation and, for the privilege of doing business in this state, every foreign corporation liable to a tax under this chapter shall annually pay to this state a franchise tax to be measured by its net income to be computed, in the manner hereinafter provided, at the rate of four per cent upon the basis of its net income

as herein computed for the next preceding income years. However, each such corporation shall pay a tax of not less than $25.00 for each such income year."

■■ The petitioner does not question the constitutionality of V. S. 47, §950 as a taxing statute and concedes that because it is authorized to do business in Vermont it is liable for the minimum tax. It does, however, claim that the Vermont franchise tax levied on foreign corporations is only "for the privilege of doing business in this state" and that any franchise tax assessed against it in excess of the minimum violates the Commerce Clause of the Federal Constitution. We have held that the Vermont franchise tax levied on foreign corporations is a tax for the privilege of doing business and not a direct tax on allocated income. *Union Twist Drill Co.* v. *Harvey*, 113 Vt 502, 508, 37 A2d 389; *Ruppert* v. *Commissioner of Taxes*, 117 Vt 83, 87, 85 A2d 584. If the tax is one for the privilege of doing business only, under the decisions in *Ozark Pipe Line Corp.* v. *Monier*, 266 US 555, 45 S Ct 184, 69 L Ed 439, and *Spector Motor Service* v. *O'Conners*, 340 US 602, 71 S Ct 508, 95 L Ed 573, the franchise tax assessed against the petitioner in excess of the minimun violates the Commerce Clause of the Federal Constitution. The petitionee, in effect, concedes this in his brief.

However, the petitionee claims that the franchise tax levied on foreign corporations by V. S. 47, §950, is more than what we have heretofore said it was. That because the legislature levied a tax against a domestic corporation for the privilege of exercising its franchise in this state in an organized or corporate capacity, by necessary implication the legislature intended to levy a franchise tax against foreign corporations for doing business in this state in an organized or corporate capacity. If V. S. 47, §950 means what the petitionee claims it does, then under the decision in *Memphis Natural Gas Co.* v. *Stone*, 335 US 80, 68 S Ct 1475, 92 L Ed 1832, the franchise taxes assessed against the petitioner do not violate the Commerce Clause of the Federal Constitution.

In this case the only questions to be determined are, does V. S. 47, §950 mean what we have heretofore said it did

or does it mean what the petitionee claims? The constitutionality of V. S. 47, §950 is not involved in this case.

■■ In construing a statute, the real meaning and purpose of the Legislature is to be sought, and if a fair and reasonable construction discloses it, it is to be given effect although a taxing statute is not to be extended by implication beyond the clear import of the language used and doubts are to be resolved against the taxing power and in favor of the taxpayer. The intention of the legislature is to be ascertained, not from the literal sense of the words used, but from a consideration of the whole and every part of the statute, the subject matter, the effects and consequences and the reason and spirit of the law. *Union Twist Drill Co.* v. *Harvey*, 113 Vt 493, 502, 37 A2d 389, and cases cited.

The legislature has defined "franchise tax" as "a tax on every domestic corporation for the privilege of exercising its franchise in this state in a corporate or organized capacity, and a tax on every foreign corporation for the privilege of doing business in this state, measured by or according to the net income of such corporation." V. S. 47, §949, par. V.

■ Having in mind this definition of a franchise tax and that in levying this tax on foreign corporations, the legislature expressly limited it so that it was only "for the privilege of doing business in this state", the real meaning and purpose of the legislature seems clear. Furthermore, in both V. S. 47, §949, Par. V and V. S. 47, §950, the legislature made clear distinctions between domestic and foreign corporations as to the nature of the franchise tax in this state. The petitionee asks us to read into V. S. 47, §950 by implication words which the legislature didn't put into it and which would entirely change its meaning and intent. To do this would extend a taxing statute by implication beyond the clear import of the language used in violation of a long established rule of statutory construction. If the legislature had intended to levy a franchise tax on foreign corporations for the privilege of doing business in this state in an organized or corporate capacity it would have said so just as it did in levying the tax on domestic corporations for the privilege of exercising its franchise in this

state. Any such change in the meaning and intent of V. S. 47, §950 as the petitionee advocates must be made by the legislature. It was the real meaning and purpose of the legislature in enacting V. S. 47, §950 to levy a franchise tax on foreign corporations only for the privilege of doing business in this state.

*State* v. *Clement Nat. Bank*, 84 Vt 167, 179, 78 A 944 cited by the petitionee in oral argument is not in point. That case was decided long before the present franchise tax law was enacted and statutes bearing no resemblance to the one under consideration in these cases were being considered.

*Orders sustaining demurrers reversed, and causes remanded for further proceedings not inconsistent with this opinion.*