## Town of Cambridge v. Harry and Florence Bassett

[453 A.2d 413]

No. 117-81

Present: Billings, Hill, Underwood and Peck, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed November 2, 1982

*Sargent & White,* Morrisville, for Plaintiff-Appellant.

*Philip J. Fitzpatrick,* Jeffersonville, for Defendants-Appellees.

**Billings, J.** This is an appeal from an order of the Northwest Board of Appraisers prohibiting the Town of Cambridge from considering a property owner's source of income in determining whether to extend to that owner the benefits of its Farmer's Tax Stabilization Contract.

In August of 1979, Mr. and Mrs. Bassett petitioned the selectmen of the Town of Cambridge (hereinafter Town) to allow them, as owners of farmland, to enter into one of the tax stabilization contracts which the Town regularly offered to eligible property owners. The selectmen denied the Bassetts' petition, declaring that in order to be eligible, property owners must derive no less than two-thirds of their income from farming, a requirement which the Bassetts failed to meet. This ruling was affirmed on appeal by the Cambridge Board of Civil Authority. 32 V.S.A. § 3846(d) ; 32 V.S.A. § 4404.

The Bassetts next took their claim to the Director of Property Valuation & Review, who assigned the case to the Northwest Board of Appraisers. 32 V.S.A. § 4461. After a hearing, the Board reversed the earlier rulings and ordered the Town to grant the Bassetts a farmer's contract. Specifically, the Board found that (1) the Town's two-thirds income classification was constitutionally unreasonable and contrary to the purposes of 24 V.S.A. § 2741; and (2) a municipality electing to enter into farm contracts pursuant to 32 V.S.A. § 3846 must offer them to all owners who meet the requirements of that statute. It is from this order that the Town now appeals. 32 V.S.A. § 4466; 3 V.S.A. § 815(a) ; see *Town of Barnet* v. *New England Power Co.,* 130 Vt. 268, 269–70, 291 A.2d 396, 397 (1972). The Town argues that its income guidelines are in harmony with the statutory scheme, and are well within the scope of discretion granted to municipalities by the tax stabilization legislation. 32 V.S.A. § 3846.

In order to review the Board's order, it is first necessary to understand the statutory framework controlling the issuance of farmer's contracts. The relevant statutory scheme has evolved over a period of almost thirty years, during which time there have been many additions, deletions and amend-

ments by the legislature. Adopted in 1955, under the subchapter of "Economic Development" entitled "Aid to Business," § 2741 of Title 24 permitted municipalities to enter into contracts with commercial and industrial business owners in order to fix their property tax at an amount less than that based on fair market value. The intent of such legislation was clearly to provide towns with a way to attract new businesses. *Vermont Motor Inns, Inc.* v. *Town of Hartford*, 134 Vt. 52, 54–55, 350 A.2d 369, 371 (1975).

In 1968, the legislature broadened the statute to include farmers among those property owners benefited, but limited eligibility by defining farmers as persons receiving at least two-thirds of their gross income from farming. In order to execute such stabilization contracts, with farmers as well as with owners of other business properties, the town selectmen were required to be authorized for that purpose by a two-thirds town vote, and any contracts so executed could not exceed ten years' duration. By a 1974 amendment, the income requirement for farmers was deleted, the term "farmer" was replaced with owner of "agricultural" land, and other property owners as well were made eligible for tax stabilization. In addition, the legislature lowered to a mere majority the town vote required to authorize stabilization contracts with agricultural owners, while retaining the two-thirds vote required for other business properties.

In 1977 the legislative scheme was significantly modified. Through the enactment of a wholly new statute under the "Exemptions" chapter of Title 32 ("Taxation and Finance"), the legislature provided an alternate means for towns to enter into such contracts with owners of farmland. 32 V.S.A. § 3846. That section provides that municipal legislative bodies (i.e., selectmen or aldermen) are permitted to enter into tax stabilization contracts with owners of farmland without the requirement of a town vote; that is, under this section the selectmen are "deemed" to have the town's authorization ordinarily required under 24 V.S.A. § 2741.

Section 3846(b) specifically incorporates certain provisions of 24 V.S.A. § 2741, making them applicable to contracts executed under this new statute as well. The selectmen are limited to the stabilization alternatives listed in 24 V.S.A. § 2741(a); in addition, such contracts may not exceed ten

years' duration, and must be filed with the town clerk and available for public inspection pursuant to 24 V.S.A. § 2741(c). Moreover, should the selectmen choose to proceed under this section, they are required to include certain contract provisions concerning land use conversion not required in contracts authorized by town vote. 32 V.S.A. § 3846(c). Finally, the statute grants the right of appeal to property owners aggrieved by the town's execution of its stabilization plan. 32 V.S.A. § 3846(d).

The statutory scheme as it presently exists vests in municipalities considerable independence and discretion in administering the tax stabilization program. By the permissive language of 24 V.S.A. § 2741(a) and 32 V.S.A. § 3846(b), towns are given the option whether to issue stabilization contracts in the first place. Should they choose to offer such contracts, the municipality and its property taxpayers bear the burden of the resulting tax loss, and receive none of the direct state reimbursements available under other tax reduction programs. Cf. 32 V.S.A. § 3760. Once a town decides to enter into farmer's contracts, it is then free to elect to follow either one of the procedural routes: the "town voter" method, 24 V.S.A. § 2741, or the "selectmen's option" method, 32 V.S.A. § 3846. See B. Huffman, *Farm and Forest Property Tax Stabilization and State Aid to Education* (Extension Service, Univ. of Vt., Pamphlet 1977).

Having chosen one implementation method or the other, the towns are restricted, in the formation of contracts, only by the criteria for validity set out in the statutes. There are few guidelines and restrictions for towns choosing the town voter method: towns may contract with "owners, lessees, bailees, or operators of agricultural . . . real and personal property." 24 V.S.A. § 2741(a). With the exception of those prerequisites concerning contract duration and filing already outlined above, all other contract terms and provisions are left to the town's discretion.

The selectmen's option method, however, places additional limitations on the town's discretion. In addition to incorporating the provisions of 24 V.S.A. § 2741 concerning contract duration and filing, the statute provides that a municipality may enter into contracts only with "owners" of "farmland." The statute defines "owners" as legal title holders, 32 V.S.A.

§ 3846 (a) (3), and "farmland" as "real estate which is actively and exclusively devoted to farming and which is at least twenty-five acres in area and is operated or leased as a farm enterprise by the owner." 32 V.S.A. § 3846 (a) (1). In addition, the statute mandates that any contract executed without a town vote, that is, under the selectmen's option method, include a detailed clause governing the payback of deferred taxes in the event the land is converted from farming to another use. 32 V.S.A. § 3846 (c). Beyond these specific restrictions and requirements, however, towns are free to incorporate into their contracts any additional terms which are rationally related to furthering the policies and objectives of their individual tax stabilization programs.

In 1973, the Town of Cambridge validly voted to delegate to its selectmen the power to enter into farmer's contracts pursuant to 24 V.S.A. § 2741. The vote provided that such delegation was to last for five years, expiring in 1978. At the time of this delegation, § 2741 contained the two-thirds income requirement in its definition of farmers, and thus the selectmen were mandated by the terms of the statute to incorporate the income requirement into their farm contract. In March of 1978, when their delegated authority expired, the selectmen elected to continue issuing such contracts without a town vote, under the authority of the newly passed 32 V.S.A. § 3846. Significantly, the selectmen retained all the provisions of their former contract, including the two-thirds income requirement deleted from 24 V.S.A. § 2741 by the 1974 amendment. Since 1978, the selectmen have uniformly refused to extend the benefits of their farmer's contracts to anyone who fails to prove income eligibility.

In their appeal, the Bassetts argued that the Town exceeded its statutory authority and violated constitutional mandates by maintaining the farmer's income requirement. The Board agreed, reasoning that since the legislature in 1974 deleted the income requirement from 24 V.S.A. § 2741, such a requirement could no longer be a valid reason for a town to deny a tax stabilization contract. Thus, according to the Board, a classification of eligible property owners based on income is constitutionally impermissible, as it bears no rational relationship to the legislative objectives of 24 V.S.A. § 2741. The Board further concluded that since 32 V.S.A. § 3846 (d) allows

appeal rights to an aggrieved property owner pursuant to 32 V.S.A. Chapter 131, the legislature intended that "all owners of eligible land be entitled to a contract if the Town has in fact decided to offer" them. Without referring to the definition of farmland contained in § 3846(a)(1), the Board concluded that since the Bassetts owned farmland, they were "eligible" under 32 V.S.A. § 3846, and thus ordered the Town to offer them a farmer's contract.

The Board's statutory construction and legal conclusions represent a valiant attempt to create order out of an admittedly complex statutory scheme. However, its analysis does not withstand review by this Court. It is by now a firm principle of judicial review that "[a]lthough findings of fact by an administrative agency will not be set aside unless clearly erroneous, conclusions of law are not so protected." *In re Agency of Administration, State Buildings Division*, 141 Vt. 68, 75, 444 A.2d 1349, 1352 (1982); *In re Rendell-Baker*, 140 Vt. 110, 112–13, 436 A.2d 739, 740–41 (1981); *In re McGrath*, 138 Vt. 77, 82, 411 A.2d 1362, 1365 (1980). Moreover, this Court will follow the "construction of statutes by those charged with their execution . . . unless there are compelling indications that the construction is wrong." *In re Agency of Administration, supra*, 141 Vt. at 74–75, 449 A.2d at 1352 (citing *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381 (1969)). Finally, as we have stated before:

> [t]he true rule for the construction of statutes is to look to the whole and every part of the statute, and the apparent intention derived from the whole, to the subject matter, to the effects and consequences, and to the reason and spirit of the law, and thus ascertain the true meaning of the legislature . . . .

*Harden v. Vermont Department of Taxes*, 134 Vt. 122, 124, 352 A.2d 685, 686–87 (1976) (quoting *Billings v. Billings*, 114 Vt. 512, 514, 49 A.2d 179, 181 (1946)). A statutory construction which is "fair and reasonable" and which discloses the "real meaning and purpose" of the legislature is to be given full effect. *Magoon v. Board of Civil Authority of the Town of Johnson*, 140 Vt. 612, 614, 442 A.2d 1276, 1277 (1982) (citing *Portland Pipe Line Corp v. Morrison*, 118 Vt. 417, 420, 110 A.2d 700, 701 (1955)).

178

██ As we have already stated, the legislative scheme regarding municipal tax stabilization plans clearly vests in the towns a considerable amount of discretion. Beyond the specifically enumerated statutory requirements, towns which choose to offer such contracts are free to adopt any rules and requirements which in their judgment further the policies of their individual plans. The Town of Cambridge, acting pursuant to 32 V.S.A. § 3846, has chosen to limit the benefits of its farmer's contracts to those whose income is primarily derived from farming. This income eligibility requirement clearly meets the criterion of 32 V.S.A. § 3846(a)(1) that such contracts be entered into only with owners of farmland "which is actively and exclusively devoted to farming and . . . operated or leased as a farm enterprise." Although the income requirement was deleted from 24 V.S.A. § 2741, it is clear from the overall language of the remaining statutes that that amendment only broadened the potential class from which towns could choose eligible property owners, according to their own criteria.

██ Nor does the income requirement create an unreasonable tax classification in contravention of the equal protection clause of the Fourteenth Amendment.

[E]qual protection does not require identity of treatment with respect to classification for tax purposes, but only that the classification or distinction rest on a real, unfeigned difference; have some relevance to the legislative purposes; and lead to a difference in treatment which is not so disparate as to be wholly arbitrary.

*Vermont Motor Inns, Inc., supra,* 134 Vt. at 55, 350 A.2d at 371 (citing *Walters* v. *City of St. Louis,* 347 U.S. 231 (1954)). Thus, it cannot be said that limiting farmer's contracts to those property owners whose income is predominantly derived from farming creates an unreasonable classification for tax purposes.

██ The income criterion set by the selectmen of the Town of Cambridge for the issuance of farmer's contracts is well within the bounds of 32 V.S.A. § 3846, and is constitutionally sound. Therefore, the order of the Northwest Board of Appraisers is reversed.

*Reversed.*