## HEYMAN *v.* HAYS, COUNTY CLERK OF HAMILTON COUNTY, TENNESSEE.

### ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 121. Argued January 14, 1915.—Decided February 23, 1915.

The rulings of this court concerning the operation of the commerce clause of the Federal Constitution rest upon the broad principle of the freedom of commerce between the States, and of the equal right of a citizen of one State to freely contract either to receive merchandise from, or to send merchandise into, another State. *Am. Express Co.* v. *Iowa*, 196 U. S. 133.

The right to engage in interstate commerce is not the gift of a State; it cannot be regulated or restrained by a State, nor can a State exclude from its limits a corporation engaged in such commerce. *West* v. *Kansas Natural Gas Co.*, 221 U. S. 229.

The selling of liquor under a strictly mail-order business and the delivery within the State to a carrier for through shipment to another State to fill such orders in interstate commerce, is beyond the control of the State.

Substance, and not form, controls in determining whether a particular transaction is one of interstate commerce; and the mere method of delivery is a negligible circumstance if, in substantial effect, the transaction is such under the facts.

The protection against imposition by the State of direct burdens upon the right to do interstate commerce is practical and substantial, and embraces those acts which are necessary to the complete enjoyment of the right protected.

The mere fact that a concern doing a strictly interstate business has goods on hand within the State capable of being used in intrastate commerce, and to which attention is given, does not take the business out of the protection of the commerce clause and allow the State to impose a privilege tax on such concern.

Delivery to a carrier within the State for the sole purpose of through shipment to another State in fulfillment of a previous order from the latter state, is not, in a practical sense, the doing of business within the State so as to subject the business to a privilege tax; and so *held* as to the privilege tax attempted to be imposed by a county in Tennessee on a concern doing a strictly mail-order business confined to shipments to other States.

THE facts, which involve the constitutionality under the commerce clause of the Federal Constitution of a privilege tax imposed by state authority on a wholesale liquor business confined exclusively to filling mail orders from points outside the State, are stated in the opinion.

*Mr. Carlisle S. Littleton* and *Mr. James J. Lynch*, with whom *Mr. Jesse M. Littleton* and *Mr. George D. Lancaster* were on the brief, for plaintiff in error.

*Mr. Frank M. Thompson*, Attorney General of the State of Tennessee, and *Mr. J. B. Sizer* for defendant in error:

Chapter 479 is not repugnant to the commerce clause of the Federal Constitution.

It should be construed with other constitutional provisions and statutes which are *in pari materia* with it. See Constitution of Tennessee, Art. 1, § 28; Code provisions rendering the business of liquor dealers a privilege; the Four-mile Law, and Manufacturers' bill as construed by

the Supreme Court of the State and the state court decisions construing Chap. 479. *Austin* v. *Shelton,* 122 Tennessee, 637; *Kelly* v. *Dwyer,* 75 Tennessee, 180; *Kelly* v. *State,* 123 Tennessee, 550; *Logan* v. *Brown,* 125 Tennessee, 209; *Motlow* v. *State,* 125 Tennessee, 548; *State* v. *Butler,* 1 Shannon's Cases, 91; *State* v. *Kelly,* 123 Tennessee, 563.

According to the allegations of the bills, the contracts of sale are actually made in Tennessee, as delivery of goods by the seller to a common carrier consigned to the purchaser is a delivery to the purchaser, whose agent the carrier is. 35 Cyc. 193; *United States* v. *Andrews,* 207 U. S. 229, 240; *State* v. *Kelly,* 123 Tennessee, 556, 562.

This court is not bound or precluded by any expression of opinion by the Supreme Court of Tennessee as to whether a particular transaction constitutes interstate or intrastate business. This case does not present the question of the right of the State to tax a mere broker or selling agent, representing only non-resident principals, and selling articles not in the State in which the sales are made, but which by the terms of the contracts are to be shipped from one State into another, as in *Crenshaw* v. *Arkansas,* 227 U. S. 389; *Dozier* v. *Alabama,* 218 U. S. 123; *Stockard* v. *Morgan,* 185 U. S. 30; *Brennan* v. *Titusville,* 153 U. S. 289; *Asher* v. *Texas,* 128 U. S. 129; *Robbins* v. *Taxing District,* 120 U. S. 489, and other cases, and see *Ernest* v. *Missouri,* 156 U. S. 296.

See also *Crutcher* v. *Kentucky,* 141 U. S. 47; *Leloup* v. *Port of Mobile,* 127 U. S. 640; *McCall* v. *California,* 136 U. S. 104; *Osborne* v. *Mobile,* 16 Wall. 479; *Pickard* v. *Pullman Co.,* 117 U. S. 34; *Covington Bridge Co.* v. *Kentucky,* 154 U. S. 205; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 204, and *Moran* v. *New Orleans,* 112 U. S. 69, which can all be distinguished, as those cases involved the right of the State to tax a direct instrumentality of interstate commerce or the commerce itself.

A privilege tax on a merchant, levied by the State in which he is domiciled, where his goods and business are located, and where he makes his sales and deliveries, is not a violation of the commerce clause, because the merchant chooses, for reasons satisfactory to himself, to confine his trade to filling mail orders from non-residents of the State. If such a tax affects interstate commerce at all it is not directly, but only remotely and incidentally. *N. Y., L. E. & W. R. R.* v. *Pennsylvania,* 158 U. S. 431, 439; *Louis. & Nash. R. R.* v. *Kentucky,* 183 U. S. 503, 518; *Howe Machine Co.* v. *Gage,* 100 U. S. 296; and see *Browning* v. *Waycross,* 233 U. S. 16.

A merchant is not an instrument of interstate commerce. He may engage in interstate commerce, and while so engaged the States may not tax either the goods actually in transit or any of the instrumentalities used in the interstate transportation, or levy any other tax based on the fact of interstate business. *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 82.

It is only after sales have been made and the goods have been constructively delivered to the purchasers by delivery to the carriers that the interstate transaction begins. *Munn* v. *Illinois,* 94 U. S. 113; *Williams* v. *Fears,* 179 U. S. 270; *Hooper* v. *California,* 155 U. S. 648; *Hopkins* v. *United States,* 171 U. S. 578.

Complainants having taken out a Federal license which authorized them to sell both to non-residents and residents and to carry on generally the business of selling and dealing in liquors in Chattanooga, cannot escape liability for the tax levied by the State on their occupation on the ground that they intend to confine themselves to a branch of the business which they contend involves interstate commerce. *Ficklen* v. *Taxing District,* 145 U. S. 1.

If the business carried on by the complainants involves the transaction of interstate commerce by them at all, yet the State may lawfully require them to pay a privilege

tax for the business done in the State. *Nathan* v. *Louisiana*, 8 How. 80; *Woodruff* v. *Parham,* 8 Wall. 123; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 368; *Pennsylvania Ry.* v. *Knight*, 192 U. S. 21; *Cargill* v. *Minnesota*, 180 U. S. 482.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

As a prelude we give a mere outline of the relevant laws of Tennessee. In 1909 the manufacture in the State of "intoxicating liquors for the purpose of sale" was prohibited. All liquors were included except alcohol of a stated degree of proof "for chemical, pharmaceutical, medical, and bacteriological purposes." The state court held this act constitutional. *Motlow* v. *State*, 125 Tennessee, 547. In the same year (1909) the sale of liquors as a beverage was forbidden within four miles of any schoolhouse, public or private, whether school was in session or not. This law was held constitutional and it is said in the argument that it was construed as excluding all sales of liquor throughout the State except sales by a druggist under a physician's prescription and sales for mechanical, medicinal, sacramental and other like purposes. *Kelly* v. *State*, 123 Tennessee, 516.

In Tennessee the system of taxation embraces *ad valorem* property taxes, merchants' taxes by a percentage on their capital and privilege taxes for the right to engage in business of a prescribed character. In 1909 a privilege tax was imposed upon wholesale and retail liquor dealers. The prohibitory liquor law (the four-mile law) was held not to embrace a mail order business, that is, orders by mail from other States and the shipment from Tennessee to such other States by carrier, because such business was interstate commerce not within state control. *State* v. *Kelly*, 123 Tennessee, 556.

In 1912 this suit was commenced to enjoin the collection of a county privilege tax for carrying on a wholesale liquor business in 1912 and to recover back the sum of a like tax for the same year which had been collected by the State over protest. · It was in substance averred that having on hand in the State a stock of liquors, the complainant firm had found it unprofitable to seek to carry on the business of selling within the State and therefore had prior to that time abstained from all attempts to carry on business in the State by selling any liquor directly or indirectly therein and had confined its activities to a mail order business, that is, the soliciting of orders from persons in other States by mail, the receipt of such orders and the filling of the same by delivering the liquor to a carrier for through transportation out of the State. Averring that such business was purely interstate commerce which the State or county had no right to directly burden, it was alleged that the attempt of the State and county to impose the privilege taxes in question was an unlawful interference with, and a direct burden upon interstate commerce and therefore void. The bill was demurred to as stating no case. The demurrer was overruled and the defendants electing to plead no further, a decree went in favor of the complainants for the repayment of the one tax and enjoining the enforcement of the other. The Supreme Court reversed this judgment and because of the asserted repugnancy of the tax whose validity was thus sustained to the Constitution of the United States, this writ of error was prosecuted.

In *Am. Express Co.* v. *Iowa*, 196 U. S. 133, 143, referring to previous rulings concerning the operation of the Commerce Clause it was said:

"Those cases rested upon the broad principle of the freedom of commerce between the States and of the right of a citizen of one State to freely contract to receive merchandise from another State, and of the equal right of the

citizen of a State to contract to send merchandise into other States."

And again in *West* v. *Kansas Natural Gas Có.*, 221 U. S. 229, where the law of a State prohibiting the piping out from the State of natural gas was held to be repugnant to the Commerce Clause, it was observed, page 260:

"At this late day it is not necessary to cite cases to show that the right to engage in interstate commerce is not the gift of a State, and that it cannot be regulated or restrained by a State, or that a State cannot exclude from its limits a corporation engaged in such commerce."

Indeed, in the opinion of the court below there was not the slightest intimation of doubt concerning this elementary doctrine nor any suggestion that if the complainant firm did no business in the State and confined its activities exclusively to transactions of interstate commerce there was any power to impose the privilege taxes in controversy. And no doubt was expressed concerning the fact that abstractly and inherently the selling of liquor under a strictly mail order business and the delivery in Tennessee of liquor to a carrier for through shipment to other States to fill such orders was interstate commerce beyond the control of the State, which the court had previously pointed out in *State* v. *Kelly, supra*. But the decision was based upon what was deemed to be the legal result of distinctions arising from the mode in which the complainant carried on its business, which the court pointed out as follows:

"But it appears, also, from the bill, not in express terms but by clear inference from other matters stated, that the complainant has a regularly organized business—a business house and employés, &c.—and that he is conducting the business within the State of Tennessee, although he sells all his goods beyond the State.

"We are of the opinion that the case falls directly within *Logan* v. *Brown*, decided by this Court last year

and reported in 141 S. W. Rep. 751 and 125 Tennessee, and the Federal cases therein referred to and relied on, and that there is no substantial distinction between that case and the present one."

We must look, then, to *Logan* v. *Brown* to ascertain the implied conditions which were found to constitute a local business done in Tennessee which made the privilege taxes valid, although, as admitted, no liquor was sold in Tennessee but all of it was exclusively sold under mail orders from other States. Without intimating that if here present it would be material, there existed in *Logan* v. *Brown* an element not found in this case, that is, that the stock of liquor which was held in Tennessee and which was exclusively sold under the mail order system was constantly replenished by the receipt of liquor from other States likewise shipped in as the result of mail orders, and in *Logan* v. *Brown* the receipt of such goods, the breaking of their bulk and the commingling with the existing stock was found to be a business done in Tennessee independent of the shipping of goods to other States under the mail orders. With such considerations removed from view, carefully analyzing the opinion in *Logan* v. *Brown* we find that the only grounds held in that case to establish a business done in the State independent of the sale and shipment of the goods out of the State under the mail order system were the following: (1) The existence of the goods in the State held in a warehouse as stock susceptible of being sold in the State if there was a desire to do so and ready to be shipped in the channels of interstate commerce; (2) The care and attention for the purpose of packing or otherwise which must be given to the goods situated in the State to enable the interstate commerce shipment to be made; (3) The receipt in the State from other States of the orders; (4) The clerical force or assistance which was required in the State to keep an account of the shipments as made to other States and the super-

vision in Tennessee which was required to conduct the exclusive business of shipping into other States and of receiving the price resulting from such shipments.

But we are of opinion that although it be conceded that such facts were clearly to be implied from the allegations of the complaint that no sales were directly or indirectly made in the State and that the business was exclusively confined to soliciting mail orders from other States and the delivery to a carrier in fulfillment of such orders, such assumed facts afford no ground for taking the business out of the protection of the Interstate Commerce Clause and thus conferring upon the State authority to impose a tax on the privilege of carrying it on. We reach this conclusion because we are of opinion that giving the fullest effect to the conditions stated they were but the performance of acts accessory to and inhering in the right to make the interstate commerce shipments and therefore to admit the power because of their existence to burden the right to ship in interstate commerce would necessarily be to recognize the authority to directly burden such right. In the nature of things the protection against the imposition of direct burdens upon the right to do interstate commerce, as often pointed out by this court, is not a mere abstraction affording no real protection, but is practical and substantial and embraces those acts which are necessary to the complete enjoyment of the right protected.

In addition to the foregoing considerations upon which, as we have seen, the conclusion in *Logan* v. *Brown* that local business was done in the State was based, it is now urged in argument by the State that the correctness of such conclusion is in addition demonstrated by the fact that the goods embraced by the orders received from other States were delivered to a carrier in Tennessee, and as such carrier was the agent of the buyer, therefore the sales were completed in Tennessee. But this merely denies the interstate commerce character of the mail order busi-

ness. It directly conflicts with the ruling of the state court in *State* v. *Kelly, supra,* and therefore comes to this: That under the law of the State, such business is interstate commerce for the purpose of allowing it to be done, but when done a privilege tax may be exacted for doing it because it is not such commerce. It is no answer to suggest that the *Kelly Case,* while treating the mail order business as not within the prohibition law because it was interstate commerce, really was but an expression of a broad rule of interpretation giving effect to the spirit and intent of the prohibition law, since delivery in the State of liquor to be transported to another State could not be said to be a sale or delivery as a beverage. But if this rule of interpretation were to be here applied, it would destroy the distinction which it is advanced to sustain, for it would lead to the conclusion that the act of delivery for the sole purpose of through shipment to another State in fulfillment of a previous order was in no practical sense the doing of business within the State. But this is immaterial since it is not open to controversy that substance and not form controls in determining whether a particular transaction is one of interstate commerce and hence that the mere method of delivery is a negligible circumstance if in substantial effect the transaction under the facts of a given case is interstate commerce. *Am. Express Co.* v. *Iowa,* 196 U. S. 133, 144; *Savage* v. *Jones,* 225 U. S. 501, 520.

Some cases [1] are pressed in argument as upholding the privilege tax in question under the circumstances here disclosed but they are inapposite. We do not stop to review them in order to sustain this appreciation of the cases relied on since in our opinion in the nature of things its

---

[1] *Nathan* v. *Louisiana,* 8 How. 73, 80; *Woodruff* v. *Parham,* 8 Wall. 123; *Wiggins Ferry* v. *East St. Louis,* 107 U. S. 365, 368; *Pennsylvania Ry.* v. *Knight,* 192 U. S. 21; *Cargill* v. *Minnesota,* 180 U. S. 452.

accuracy is demonstrated by a mere statement of the proposition to which all the contentions here urged are in their essence reducible, which is as follows. Although the shipment of merchandise from one State to another is interstate commerce which the States cannot directly burden, nevertheless the States may directly burden such shipments in every case where there is any merchandise kept in the State to be the subject of interstate commerce shipment or when any of those steps which are essentially prerequisite to the initiation of an interstate commerce shipment are taken by the owner of the merchandise.

*Reversed.*