369 P.2d 123

**PACIFIC STATES CAST IRON PIPE COMPANY, Plaintiff,**

v.

**STATE TAX COMMISSION, Defendant.**

**No. 9493.**

Supreme Court of Utah.

Feb. 20, 1962.

C. M. Gilmour, Salt Lake City, for plaintiff.

Walter L. Budge, Atty. Gen., F. Burton Howard, Asst. Atty. Gen., for defendant.

HENRIOD, Justice.

Review of a tax assessment levied for alleged sales tax liability incident to the sale of pipe to a nonresident purchaser taking delivery, not by common carrier, but in his own equipment at the pipe company's foundry in Utah, delivering it himself to an out-of-state destination designated in the contract. Reversed.

The question: whether *under the facts of this case,* delivery in Utah to the purchaser, coupled with actual transportation by him to an out-of-state destination transmutes an erstwhile interstate shipment, whose taxability by Utah concededly would be invalid, as being a burden on interstate commerce under the commerce clause,[1] into a taxable intrastate transaction not burdensome to interstate commerce.

It is conceded that had the pipe been delivered to a common carrier consigned to an out-of-state purchaser, the sale would not have been taxable in Utah. Also, that delivery was taken in Utah by the out-of-state purchaser in his own equipment, actually transported from the pipe company's foundry directly, and without interruption, to the out-of-state destination called for by the contract and bill of lading.

It seems to be undisputed also that: The pipe company makes and sells pipe in 11 western states. Delivery mostly is in interstate commerce by common carrier or in the company's own equipment. As has been said, the out-of-state purchaser took delivery here in his own equipment. The contract called for out-of-state shipment, and the pipe company set the destination price which included the going common carrier freight charge between the two points. In this case such tariff was credited to the purchaser. The bill of lading and contract of sale clearly demonstrated an understanding by both seller and buyer that the pipe was to be shipped to an out-of-state destination, to be used on a municipal project, under engineered specifications, federally okayable because of federal fiscal participation. Under such contract, bills of lading and the highly detailed specifications, it was quite improbable, if not almost impossible,

1.  Art. I, Sec. 8, U. S. Constitution, having to do with federal power "to regulate Commerce * * * among the several States * * *."

to conclude other than that the goods could not be diverted to any other or intrastate consumption. Also, it appears inescapable to conclude from the record in this case, other than that there was no effort or intent to circumvent any tax laws in virtue of the use of any contractual or transportational format designed to deceive. All of the evidence adduced points up a certainty of interstate shipment that would override any suggestion that the products were to be consumed or stored in Utah. The contract clearly evinced a contemplated interstate shipment. The contention of the Tax Commission that the documents of sale and transportation were an evasive gesture to avoid taxation, and that the goods *could have been diverted to a local use,* simply is

not sustained by the facts since the goods actually reached their consigned destination. Nor would the cases seem to sustain such a contention.[2] Had they *in fact* been *so diverted the most that could be said is* that there would have been a contractual breach respondable in damages, and perhaps reflecting a circumstance justifying the imposition of a Utah sales tax on an intrastate transaction.

The Tax Commission demurs to the pipe company's contention that the facts of this case unerringly point up an unburdenable interstate shipment, commerce clausewise. It points to several facts which it claims are conclusive of the intrastateness of this sale: 1) that delivery was taken here,[3] that title passed here,[4] and that the risk of loss shift-

2. United Fuel Gas Co. v. Hallanan, 257 U.S. 277, 42 S.Ct. 105, 66 L.Ed. 234 (1921): "The typical and actual course of events marks the carriage of the greater part as commerce among the States and theoretical possibilities may be left out of account." Hughes Bros. Timber Co. v. Minnesota, 272 U.S. 469, 47 S.Ct. 170, 71 L.Ed. 359 (1926): "The mere power of the owner to divert the shipment already started does not take it out of interstate commerce, if the other facts show that the journey has already begun in good faith and temporary interruption of the passage is reasonable and in furtherance of the intended transportation * * *."

3. The Richfield Oil case, post, negatives this concept.

4. In re Globe Varnish Co., 7 Cir., 114 F.2d 916 (1940): " * * * we think it makes no difference when the title passed, and we are unable to perceive how that fact, whenever it occurred, could be determina-

tive of the character of the sale, as to whether it was an interstate or intrastate transaction." United States v. Ohio Oil Co. [The Pipe Line Cases], 234 U.S. 548, 34 S.Ct. 956, 58 L.Ed. 1459 (1914): " * * * the fact that the oils transported belonged to the owner of the pipe line is not conclusive against the transportation being such commerce." Hughes Bros. Timber Co. v. Minnesota, 272 U.S. 469, 47 S.Ct. 170, 71 L.Ed. 359 (1926): "We do not think it important, for purposes of this case, to decide where the title to the timber was at the time the drive began." Spalding & Bros. v. Edwards, 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865 (1923): "Neither does it matter that the title was in Scholtz & Co. and that theoretically they might change their mind and retain the bats and balls for their own use." Also: Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921).

ed here. It urges that delivery, etc. constituted a "taxable event" invulnerable to any claimed offense against the commerce clause. Ordinarily it would be right.[5] But delivery here, as a technical matter, cannot transcend the interdictions of the commerce clause, if, piercing the veil of technicality, based on the particular facts here, substance reflects a situation offensive to the commerce clause. We think this case, in substance, pierces that veil.[6]

The Commission relies heavily on International Harvester Co. v. Department of Treasury [7] to support its contention. That case, on stipulated facts, simply generalizes that "Sales by branches located in Indiana to dealers and users residing outside of Indiana, in which the customers came to Indiana and accepted delivery to themselves in this state" would be taxable because of a local taxable event. If that were all we had in the instant case, our decision would be an antithesis, since, to reduce the above commentary to its own words, it simply implies, for example, that if a Utahn visits New York and buys wearing apparel with the intent of wearing it en route back to and in Utah thereafter, the sale is taxable in New York, inoffensive to the inhibitions of the

commerce clause. No corrollary, no analogy applies here. The New York seller is unconcerned as to whether the vestment be worn out in Utah or elsewhere. But if the contract were to ship 1,000 suits of clothes to a retailer in Utah without anything else, the import of such a contractual arrangement would reflect an interstate shipment that if taxed by New York, would do injustice to the traditional and historic concepts anent interstate commerce and its inviolability by local tax burdens. The International Harvester case, its forebears and successors, have provided fuel for a judicial fire over the years with respect to close factual situations, but the instant case in substance lends itself to no factual obscurity or uncertainty of contemplated result, such as to be dominated by that case and any others cited that might confuse, but do not decide the case here. We leave that confusion to those who have discussed it, and to their observations appurtenant thereto, a couple of which we refer to the reader for a review of the cases covering this whole field [8] which are discussed better there than space justifies here. If the International Harvester case created any dubitability as to application in the case here, it was laid at

---

5. McGoldrick v. Berwind-White, 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L. R. 876 (1940). International Harvester Co. v. Department of Treasury, 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313 (1944).
6. " * * * substance, and not form, controls in determining whether a particular transaction is one of interstate commerce

* * *." Heyman v. Hays, 236 U.S. 178, 35 S.Ct. 403, 59 L.Ed. 527 (1915).
7. Supra, note 5.
8. New Light on Gross Receipts Taxes, 53 Harvard Law Review; Sales Taxation of Interstate Commerce, Univ. of Detroit Law Journal, Vol. 18, p. 416.

rest by its author, who later fathered Richfield Oil Corp. v. State Board of Equalization,[9] involving an attempted sales tax imposition on a transaction where oil was delivered to a foreign purchaser's equipment in a local harbor, wherein Mr. Justice Douglas had this to say:

"The certainty that the goods are headed to sea and that the process of exportation has started may normally be best evidenced by the fact that they have been delivered to a common carrier for that purpose. *But the same degree of certainty may exist though no common carrier is involved.* The present case is an excellent illustration. The foreign purchaser furnished the ship to carry the oil abroad. * * * That delivery marked the commencement of the movement of the oil abroad. It is true * * * that at the time of the delivery the vessel was in California waters and was not bound for its destination until it started to move from the port. But when the oil was pumped into the hold of the vessel, it passed into the control of a foreign purchaser *and there was nothing equivocal in the transaction which created even a probability that the oil would be diverted to a domestic use.* It would not be clearer that the oil had started upon its export journey had it been delivered to a common carrier at an inland point. *The means of shipment are unimportant so long as the certainty of the foreign destination is plain.*"

We think our case is bottomed on facts so certainly pointing up an interstate shipment free from local tax burdens, as to transcend, even, the facts and conclusions reached in the Richfield Oil Case. It is the substance of it that counts,—not technicalities of delivery, title or assumption of risk, else the commerce clause would suffer senility and impotence.[10]

Both sides have pointed to our statute[11] and Tax Commission Regulations[12] which purport taxwise to include or exclude a particular transaction. The Regulations, no matter how definitive of what a taxable event is cannot obfuscate the true purpose and intent of the commerce clause. That clause contemplates facts and substance, and not definitions amounting to legal conclusions. We say this, conceding our dis-

9. 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80 (1946).
10. " * * * substance, and not form, controls in determining whether a particular transaction is one of interstate commerce, and hence the mere method of delivery is a negligible circumstance if, in substantial effect, the transaction *under the facts of a given case* is interstate commerce." Heyman v. Hays, supra.
11. Title 59–15–2, Utah Code Annotated 1953, and subdivisions.
12. Regulations 31 and 44, Utah Sales Tax Regulations.

position to sustain administrative agencies enjoying a greater degree of expertness in their field than do we. But we cannot interpret a conceded factual situation pointing to an interstate shipment, to result in victimization by a regulatory definitional legal conclusion, urged as being controlling over facts defying it. (Emphasis supplied)

WADE, C. J., and CALLISTER, J., concur.

CROCKETT, Justice (dissenting).

I dissent. It has long been held by the Supreme Court of the United States that a state may tax sales made within its borders even though it is the intent of the buyer to remove the items to another state prior to using them.[1] This rule was clearly set forth by Justice Douglas in International Harvester Co. v. Department of Treasury:[2] "* * * a local transaction [sale] is made the taxable event and that event is separate and distinct from the transportation or intercourse which is interstate commerce," and concluded that "those in interstate trade could not complain if interstate commerce carried its share of the burdens of local government which helped sustain it."

I see no reason why the facts of the instant case require a result different from that in International Harvester. In that case the court held taxable "Sales by branches [Pacific States Pipe Co.] located in Indiana [Utah] to dealers and users residing outside of Indiana, [Utah] in which the customers came to Indiana and accepted delivery to themselves in this state." The only fact not identical in the case now before us is that some of the buyers were also Utah companies who accepted delivery in Utah but intended to ship or transport the pipe to other states for use there. I submit that this change in the facts, if anything, makes the sales even more clearly taxable by Utah than those in the Harvester case.

The majority opinion seeks to avoid the long-standing rule of the Harvester case by relying on the case of Richfield Oil Corp. v. State Board of Equalization.[3] But the cases are completely different. The Richfield case, decided three years after the Harvester case, involved the sale for *export* of oil to the government of New Zealand, which was delivered to the purchasers' ships in a California port. The U. S. Supreme Court struck down the attempted taxation of the sale by California on the basis of the export clause of the U. S. Constitution, which provides simply that: "No State shall * * * lay any Impost or Duties on Imports or Exports."[4] In doing so, Justice

---

1. See Department of Treasury, etc. v. Wood Preserving Corp., 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188; McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565.

2. 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313.
3. 329 U.S. 69, 67 S.Ct. 156.
4. Art. I, Sec. 10, Constitution of the United States.

Douglas, who had authored the opinion in the Harvester case, made it clear that the decision did not run contrary to the law announced in the Harvester case. The latter was governed by the commerce clause of the U. S. Constitution. Its language is general, granting to Congress the power "to regulate Commerce * * * among the several States." [5] As stated above, the Supreme Court has interpreted this to mean that while interstate commerce may be required by the states to pay its own way, no state may encroach upon the power of Congress to regulate it by placing an undue burden on the interstate flow of goods. Whereas, in the Richfield case, the court was not concerned with the reasonableness of a burden, but only with the simple and direct prohibition against imposing a tax on exports.

Justice Douglas pointed out that the two constitutional provisions, while related, are not exactly the same. He elaborated on the reasons for the different rules thus:

"* * * the law under the Commerce Clause has been fashioned by the Court in an effort 'to reconcile competing constitutional demands, that commerce between the states shall not be unduly impeded by state action, and that the power to lay taxes for the support of state government shall not be unduly curtailed.' That accommoda-

tion has been made by upholding taxes designed to make interstate commerce bear a fair share of the cost of the local government from which it receives benefits * * * and by invalidating those which discriminate against interstate commerce, which impose a levy for the privilege of doing it, which place an undue burden on it. * * *

"It seems clear that we cannot write any such qualifications into the Import-Export Clause. It prohibits every State from laying 'any' tax on imports or exports without the consent of Congress."

He further pointed out that this distinction accounted for the different result upholding the Mississippi sales tax in Superior Oil Co. v. Mississippi [6] where the facts were almost identical with those in the Richfield case except that the oil was being transported to Louisiana for resale by the purchaser rather than to a foreign country.

The facts of our case clearly show sales made in Utah which have been held unequivocally by the U. S. Supreme Court to be a "taxable event"; and that a tax levied on such sales by a state does not run afoul of the commerce power of the Federal Government. I am not aware that there has been any great reluctance on the part of the appropriate agencies of the Federal Gov-

5. Art. I, Sec. 8, Constitution of the United States.

6. 280 U.S. 390, 50 S.Ct. 167, 74 L.Ed. 504

ernment to exercise their authority or to assume the full measure of their responsibility. No reason is suggested, and I think none exists, why this court should be oversolicitous in extending federal controls over business transactions within this state.

To rule that where a sale is made in Utah it is not subject to a sales tax merely because the item purchased is to be taken to another state, would open an avenue to easy avoidance of the tax by the customer simply declaring his intention to take the purchase elsewhere; would provide a basis for charging tax to some customers and not others; would give rise to untold mischief in administration and to extensive loss to the state of revenue to which it is entitled.

The difficulties just pointed out and the unreasonableness and impracticality of the majority's conclusion is further emphasized by the fact that adjoining states have a use tax law, similar to our own, which provides that property brought into the state is subject to a use tax, equivalent to the sales tax, but exempts the property from the use tax if a sales tax is paid.[7] Thus under the majority decision Utah would lose the sales tax on these transactions made within our state to which the state is entitled, and the equivalent tax would be collected by a foreign state. On the other hand, foreign states in all likelihood would collect sales taxes on similar sales, and when such purchases were brought into Utah, our use tax could not be collected.[8]

The foregoing emphasizes the propriety and the desirability of adhering strictly to the provisions of our statutes which levy sales tax on "every retail sale of tangible personal property made within the state of Utah."[9] But they exempt "sales which the state of Utah is prohibited from taxing under the Constitution or laws of the United States."[10] It could not be plainer that the legislature intended to tax all sales made within the state insofar as it has authority to do so. It is for the legislature to determine how the taxing power of the state should be used, and it is not the function of this court to examine the policy behind the tax. It is hardly necessary to point out that the residuum of power rests with the states and is limited only by those expressly granted by the Federal Constitution to the Federal Government.[11] The United States Supreme Court is the final authority in interpreting that document. When it has spoken and laid down a clear rule regarding the commerce clause which governs the issue here presented, it is not our prerogative, nor should it be our desire to redefine those limits ascribing additional controls over activities within our state.

7. For discussion of this proposition see Butler v. Tax Comm., 13 Utah 2d 1, 367 P.2d 852.
8. Ibid.
9. Sec. 59–15–4, U.C.A.1953.
10. Sec. 59–15–6, U.C.A.1953.
11. Amendment 10, Constitution of the United States.

The Tax Commission, upon competent evidence, expressly found that the transactions in question were sales made within the state of Utah. That finding is unassailable and the tax is payable. The decision should be affirmed.

McDONOUGH, J., concurs in the views expressed in the opinion of CROCKETT, J.