**DODGEN INDUSTRIES, INC., Appellee,**

v.

**IOWA STATE TAX COMMISSION, E. A. Burrows, Jr., Lynn Potter, and X. T. Prentis, as Members of the Iowa State Tax Commission, Appellants.**

**No. 52879.**

Supreme Court of Iowa.

July 18, 1968.

Richard C. Turner, Atty. Gen., George W. Murray and Harry M. Griger, Asst. Attys. Gen., for appellants.

Maurice E. Stark, Fort Dodge, and Parrish, Guthrie, Colflesh & O'Brien, Des Moines, for appellee.

MASON, Justice.

Plaintiff-appellee, Dodgen Industries, Inc., an Iowa corporation doing business in Humboldt, protested an assessment of retail sales tax and penalty on sales of specially constructed truck bodies sold to out-of-state purchaser for use outside the state of Iowa. After defendant-appellant, Iowa State Tax Commission, upheld said assessment, Dodgen appealed to the Humboldt County district court seeking to have the assessment set aside. From a judgment and decree favorable to Dodgen, State Tax Commission appeals to this court.

Validity of the tax assessment presents two issues, whether the state of Iowa may levy a sales tax upon the sales transaction here involved without transcending constitutional authority to lay tax on the receipts therefrom and whether the Sales Tax Law was intended to tax such sales under section 422.43, Code, 1962.

We refer to plaintiff-appellee, Dodgen Industries, Inc., as Dodgen and to defendant-appellant, Iowa State Tax Commission, as the commission.

I. Following completion of a five-year sales tax audit conducted by the commission of Dodgen and its subsidiaries, an additional tax liability of $10,533.05 plus penalty of $2562.95 was developed. After the protest hearing before it, the commission issued its findings of fact, conclusions of law and order on December 30, 1963, sustaining the assessments in their entirety on the ground the controverted sales did not transcend any constitutional authority to lay taxes on the receipts therefrom.

The case is concerned with transactions upon which the commission assessed sales tax, not with transactions upon which the tax was not assessed.

The controverted transactions of Dodgen involve contracts entered into and executed outside the state of Iowa by its agents with delivery and installation at Dodgen's plant within the state.

Dodgen purchases specialized truck bodies, knocked down, from a Sioux City manufacturer in truck load lots and assembles them at its Humboldt plant for sale and distribution.

Under their method of operation, Dodgen's salesmen call upon customers in the customers' state which, for purposes here, is not Iowa. The salesmen would obtain a contract to purchase executed by the buyer plus a substantial downpayment, both were forwarded to Dodgen.

When a purchase contract for a truck is received, Dodgen then prepares the unit to conform to the contract's specifications including color, paint design and for mounting upon the purchaser's truck. When ready for installation, the customer is notified and he or his agent brings the truck on which the body is to be mounted to Dodgen's plant as the body and truck must match, the axle length, cab to axle length and weight distribution being critical. The power hookup must also be made in a satisfactory manner.

The body is then mounted on the truck and Dodgen's quality control man goes through a check list and has the customer or his representative sign acceptance of delivery. Settlement is made by payment of any balance due and the owner or his agent returns with the truck to the purchaser's place of residence, which in all cases here involved is outside Iowa. It is there placed in use and in no instance has the unit been brought back or used in Iowa.

There is no issue of use tax in this case.

Dodgen made sales, among others, to customers who reside in Minnesota and Nebraska. It was agreed that at the time neither state had sales or use taxes.

II. In its propositions relied on for reversal, the commission asserts the trial court erred in ruling that the controverted sales transactions were made outside of Iowa and were interstate sales or transactions in interstate commerce.

It is the commission's position that the questionable sales were intrastate sales of tangible personal property wherein title thereto and delivery thereof occurred in Iowa and were therefore subject to the sales tax under section 422.43 and Tax Commission, I.D.R., 55, 1962.

The trial court concluded the sales involved were transactions in interstate commerce; section 422.43 does not impose sales tax on such sales whether the sale is made outside or in Iowa; the sales do not lose their identity as interstate sales because delivery is made to the out-of-state buyer in Iowa instead of to a common carrier agent of the buyer or some other type of agent.

It was the trial court's opinion the legislature intended and the commission has so interpreted Division IV of chapters 422 and 423 of the 1962 Code that the retail sales tax would apply to "sales of tangible personal property sold at retail *in the state* to consumers or users" and the use tax would be imposed on property sold intrastate in other states but for use in Iowa, thus covering all sales where the property is to be used or consumed within the borders of the state of Iowa; that the sales tax statute was not intended to reach transactions in interstate commerce.

At trial it was Dodgen's contention the sales sought to be taxed are sales in interstate commerce and as such are not subject to the Iowa Sales Tax. Trial court so held in voiding the tax assessments and penalties herein made by the tax commission. The commission contends the state of Iowa is not per se prohibited under the commerce clause of the United States Constitution from imposing a retail sales tax on transactions which affect interstate commerce; it may impose a sales tax on sales transactions whereby title to and delivery of goods occur in the taxing state regardless of the fact the goods are subsequently transported in interstate commerce for use in another state. We agree.

III. "The commerce clause of the Constitution (art. 1, section 8, cl. 3) expressly commits to Congress and impliedly withholds from the several states the power to regulate commerce among the latter. Such commerce is not confined to transportation from one state to another, but comprehends all commercial intercourse between different states and all the component parts of that intercourse. * * * ' "Commerce" is a term of the largest import. It comprehends intercourse for the purposes of trade in any and all of its forms, including the transportation, purchase, sale, and exchange of commodities.' * * * 'Buying and selling and the transportation incidental thereto constitute commerce.' * * * '[C]ontracts to buy, sell, or exchange goods to be transported among the several states' [are] 'part of interstate trade or commerce. * * *' " Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 290–291, 42 S.Ct. 106, 108, 66 L.Ed. 239, 243–244.

"Nor is this conclusion opposed by cases decided in this court * * * in which we have had occasion to define the line between state and Federal authority under facts presented, which required a definition of interstate commerce where the right of state taxation was involved, * * *. In those cases we have defined the beginning of interstate commerce as that time when goods begin their interstate journey by delivery to a carrier or otherwise, thus passing beyond state authority into the domain of Federal control. * * * None of them indicates, much less decides, that interstate commerce does not include the buying and selling of products for shipment beyond state lines. * * *"

Lemke v. Farmers' Grain Co., 258 U.S. 50, 55, 42 S.Ct. 244, 246, 66 L.Ed. 458, 462.

"The precise boundary between national and state power over commerce has never yet been, and doubtless never can be, delineated by a single abstract definition. The most widely accepted general description of that part of commerce which is subject to the federal power is that given in 1824 by Chief Justice Marshall in Gibbons v. Ogden, 9 Wheat. 1, 189, 190, 6 L.Ed. 23: 'Commerce, undoubtedly, is traffic, but it is something more—it is intercourse. * * * Commerce is interstate, he said, when it 'concerns more states than one.'

" * * *

" * * * No commercial enterprise of any kind which conducts its activities across state lines has been held to be wholly beyond the regulatory power of Congress under the Commerce Clause. * * *" United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 550–553, 64 S.Ct. 1162, 1172–1173, 88 L.Ed. 1440.

We concede the sales here in question involve, in part, transactions in interstate commerce.

"While the general principles applied in these cases are not to be denied, there is a class of cases which hold that contracts between citizens of different states are not the subjects of interstate commerce simply because they are negotiated between citizens of different states, or by the agent of a company in another state, where the contract itself is to be completed and carried out wholly within the borders of a state, although such contracts incidentally affect interstate trade." Ware & Leland Co. v. Mobile County, 209 U.S. 405, 411, 28 S.Ct. 526, 528, 52 L.Ed. 855, 858.

" * * * [A]s we held in the [Department of Treasury of State of Indiana v.] Wood Preserving Corp. case [313 U.S. 62, 67–68, 61 S.Ct. 885, 888, 85 L.Ed. 1188], neither the Commerce Clause nor the Fourteenth Amendment prevent the imposition of the tax on receipts from an *intrastate transaction* even though the total activities from which the local transaction derives may have incidental interstate attributes." International Harvester Co. v. Department of Treasury, 322 U.S. 340, 344, 64 S.Ct. 1019, 1021, 88 L.Ed. 1313. (Emphasis supplied).

The ultimate question here presented then, is whether these sales transactions, concededly in part in interstate commerce, entail intrastate transactions upon which the state of Iowa may levy a sales tax.

In International Harvester Co. v. Department of Treasury, supra, suit was brought to recover payment of taxes imposed by the state of Indiana on certain sales transactions. International maintained manufacturing plants and sales branches in Indiana as well as in adjoining states.

The Court stated, " * * * The transactions which Indiana says may be taxed without infringement of the federal Constitution are described by the Indiana Supreme Court as follows:

" * * *

" 'Class D: Sales by branches located in Indiana to dealers and users residing outside of Indiana, in which the customers came to Indiana, and accepted delivery to themselves in this state.'

" * * *

" * * * [B]oth the *agreement to sell* and the *delivery* took place in Indiana. Those events would be adequate to sustain a sales tax by Indiana. * * * [A] local transaction is made the taxable event and that event is separate and distinct from the transportation or intercourse which is interstate commerce. * * *" 322 U.S. at 342–346, 64 S.Ct. at 1020–1022. (Emphasis supplied).

Trial court found as a fact the sales here in question involved contracts entered into and executed by and between Dodgen and its buyers outside the state

of Iowa; the sales were made outside the state of Iowa. It therefore thought this case distinguishable in that the sale or agreement to sell as well as delivery of the product took place in the taxing state, and thus became an intrastate transaction, (presumably one which would be taxable).

We have serious doubt whether these sales were made outside the state of Iowa. It is true these specially constructed truck bodies were ordered from without the state through Dodgen's soliciting agents. However, as stated, these contracts to purchase were forwarded to the home office at Humboldt along with a 20 percent downpayment; the body constructed in conformity with the contract's specifications is there mounted on truck furnished by buyer; when the buyer takes delivery in Iowa he must pay balance of purchase price and buyer or his agent signs acceptance of delivery and certifies it is satisfactory in all respects before he drives away from the plant.

"If the acceptance is made immediately after the offer when the parties are together, no question can arise as to the place of contract. The place where the parties are is the only possible place of contract. But if the acceptance is not made simultaneously with the offer, and is made in a different place, the universal principle disposing of this and any similar question is that the place of the contract is the place where the last act necessary to the completion of the contract was done, * * *. If an offer contemplates a unilateral contract and calls for the performance of an act, the place where that act is done is the place of the contract. Thus if goods are shipped in conformity with an offer, the place of the contract is the place of shipment, since the act requested is the shipment. * * *" 1 Williston on Contracts, Third Ed. (Jaeger), section 97.

Aside from this question we do not believe the intrastate transactions, attendant to sales in interstate commerce, deemed taxable events by the United States Su-preme Court require the taxing state be the place of contracting.

In International Harvester Co. v. Department of Treasury, supra, the court did allude to contracting in the taxing state as being an adequate taxable event with reference to the "Class D" sales. However it was there stipulated the orders or contracts for those sales were accepted and the sales proceeds were received by the branch managers at the branches in Indiana, the taxing state. See footnote 2, 322 U.S. at 342, 64 S.Ct. at 1020. Under that state of facts, had place of contracting been crucial, surely the Court would have explored the question of where the place of contracting actually was.

In addition, the Court in reference to validity of the sales tax on another class of sales stated:

" * * * The fact that the sales in Class C are made by an out-of-state seller and *that the contracts were made outside the State is not controlling.* Here as in the Wood Preserving Corp. case, *delivery of the goods in Indiana is an adequate taxable event.* When Indiana lays hold of that transaction and levies a tax on receipts which accrue from it, Indiana is asserting authority over the fruits of a transaction consummated within its borders. * * *" Id., 322 U.S. at 345, 64 S.Ct. at 1021 (Emphasis supplied).

In Department of Treasury of State of Indiana v. Wood Preserving Corp., supra, 313 U.S. at 63–66, 61 S.Ct. at 886, 85 L.Ed. 1188, seller, Wood Preserving Corporation, a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania, was qualified to do business in Indiana. Baltimore and Ohio Railroad, buyer, issued requisitions from its office in Baltimore which were accepted at seller's office in Marietta, Ohio, for railroad ties. Seller made delivery to buyer in Indiana who in turn immediately loaded them on cars and shipped them out of state. Payments were made to seller in Pennsylvania. Clearly under those facts the only trans-

action occurring in Indiana, the taxing state, was delivery to the buyer. That tax levy was upheld.

In Pacific States Cast Iron Pipe Co. v. State Tax Com'n, 13 Utah 2d 113, 369 P.2d 123, 124–125, delivery of goods manufactured to meet the specifications of an out-of-state job was accepted at the foundry in Provo, Utah, title passed there and the risk of loss shifted there. The state tax commission urged these events constituted a taxable event but the Supreme Court of Utah held the certainty of interstate shipment made the imposition of a state sales tax on these shipments unconstitutional under the commerce clause.

This decision was reversed in State Tax Commission of Utah v. Pacific States Cast Iron Pipe Co., 372 U.S. 605, 606, 83 S.Ct. 925, 926, 10 L.Ed.2d 8.

The Court stated: "* * * We reverse its judgment on the authority of International Harvester Co. v. Department of Treasury, * * *, which holds on facts close to those of this case that a state may levy and collect a sales tax, since the *passage of title and delivery* to the purchaser *took* place within the State." (Emphasis supplied). In addition to this clear pronouncement, we find no mention whatsover in the state report as to where the place of contracting was.

In McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 42–44, 49, 60 S.Ct. 388, 390–391, 394, 84 L.Ed. 565, the state of New York sought to impose a sales tax upon coal delivered to purchasers in New York City from Pennsylvania mines pursuant to sales contracts entered into in New York City.

The Court in upholding the validity of the sales tax stated:

"* * * By § 2 the tax was fixed at 'two per centum upon the amount of the receipts from every sale in the city of New York,' 'sale' being defined by § 1(e) as 'any transfer of title or possession, or both * * * in any manner or by any means

whatsoever for a consideration, or any agreement therefor.' * * *

"* * * It is conditioned upon events occurring within the state, either transfer of title or possession of the purchased property, or an agreement within the state, 'consummated' there, for the transfer of title, or possession, * * *

"* * *

"* * * 'Its only relation to the commerce arises from the fact that immediately preceding *transfer of possession to the purchaser within the state, which is the taxable event regardless of the time and place of passing title,* the merchandise has been transported in interstate commerce and brought to its journey's end. * * * *"* (Emphasis supplied).

In Pacific States Cast Iron Pipe Co. v. State Tax Commission, supra, 13 Utah 2d 113, 369 P.2d at 128 (Crockett, J., dissent), it is said: "* * * The United States Supreme Court is the final authority in interpreting [the Constitution]. When it has spoken and laid down a clear rule regarding the commerce clause which governs the issue here presented, it is not our prerogative, nor should it be our desire to redefine those limits ascribing additional controls over the activities within our state."

■ We therefore conclude that when an out-of-state buyer orders goods from an Iowa seller, delivery to and transfer of possession of the goods to him in Iowa is an intrastate transaction constituting a taxable event upon which the state of Iowa may levy a sales tax.

IV. Trial court held the sales in question did not lose their identity as interstate sales because delivery is made to an out-of-state buyer in the state of Iowa instead of to a common carrier agent of the buyer or some other type of agent. However, we conceded the sales here in question involve in part transactions in interstate commerce in reaching our conclusion that the imposition of a sales tax by the state of Iowa was constitutionally permissible.

Nonetheless included in trial court's holding is a point which perhaps necessitates further analysis.

"* * * [T]he states may not tax property in transit in interstate commerce. * * *

"If the interstate movement has not begun, the mere fact that such a movement is contemplated does not withdraw the property from the State's power to tax it. * * *" State of Minnesota v. Blasius, 290 U.S. 1, 9, 54 S.Ct. 34, 36, 78 L.Ed. 131, 135–136.

"When the commerce begins is determined * * * by its actual delivery to a common carrier for transportation, or the actual commencement of its transfer to another state. * * *" Hammer v. Dagenhart, 247 U.S. 251, 272, 38 S.Ct. 529, 531, 62 L.Ed. 1101, 1106.

"The unconditional commitment of property to a common carrier for transportation in regular course to another state * * * is generally held to place it in the stream of interstate * * * commerce, so as to render it immune from local taxation. Annot., 11 A.L.R.2d 944 * * *" Excel, Inc. v. Clayton, 269 N.C. 127, 152 S.E.2d 171, 176.

Seemingly delivery to buyer for immediate transportation out of state would just as effectively preclude state wherein delivery took place from levying a sales tax upon the transfer of possession as delivery to a common carrier.

But the Court in sustaining the tax levied on an identical transaction as here presented, in International Harvester Co. v. Department of Treasury, supra, 322 U.S. at 345–346, 64 S.Ct. at 1021–1022, stated:

"* * * The Wood Preserving Corp. case indicates that it is immaterial to the present issue that the goods are to be transported out of [taxing state] immediately on delivery. * * * Under the principle of [McGoldrick v. Berwind-White Coal Mining Co., supra], a buyer who accepted delivery in New York would not be exempt from the sales tax because he came from without the State and intended to return to his home with the goods. * * * [I]n each a local transaction is made the taxable event and that event is separate and distinct from the transportation or intercourse which is interstate commerce. * * *"

V. There remains for consideration one matter upon which we touch briefly.

"* * * [T]he Constitution declares that 'Congress shall have Power * * * To regulate Commerce * * * among the several States * * *.' In imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states * * * to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations. * * *

"But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing business, * * *. Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, * * *, affect interstate commerce which nevertheless falls short of the regulation of the commerce which the Constitution leaves to Congress. * * *

"In few of these cases could it be said with assurance that the local tax does not in some measure affect the commerce or increase the cost of doing it. But in them as in other instances of constitutional interpretation so as to insure the harmonious operation of powers reserved to the states with those conferred upon the national government, courts are called upon to reconcile competing constitutional demands, that commerce between the states shall not be unduly impeded by state action, and that the power to lay taxes for the support

of state government shall not be unduly curtailed. * * *

"Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes * * * which are aimed at or discriminate against the commerce or impose a levy for the privilege of doing it, * * *, or levy an exaction on merchandise in the course of its interstate journey. * * *" Mc-Goldrick v. Berwind-White Coal Mining Co., supra, 309 U.S. at 45–48, 60 S.Ct. at 391–393.

Dodgen made no contention that the tax here in question constituted such forbidden regulations of commerce between the states as these. However it is rather difficult to determine the constitutionality of state taxation of sales concededly in interstate commerce without considering its effect in this regard.

The previous divisions make it quite clear delivery to and transfer of possession of goods in Iowa to an out-of-state buyer consummating a sale interstate is an intrastate transaction separate and distinct from the transportation and intercourse which is interstate commerce; that buyer plans to immediately thereafter transport the goods out of state would not find the moment of that taxable event one wherein the goods are deemed to be "in transit" in interstate commerce.

In sustaining the taxes upon sales transactions quite similar to those here the Court in International Harvester Co. v. Department of Treasury, supra, 322 U.S. at 346, 348–349, 64 S.Ct. at 1022–1023, and Mc-Goldrick v. Berwind-White Coal Mining Co., supra, 309 U.S. at 48–51, 57–58, 60 S.Ct. at 393–395, 398, found the taxes were neither discriminatory toward nor unduly burdensome to those engaged in interstate commerce so as to constitute regulation of interstate commerce. Upon the reasons there given we conclude imposition of the Iowa sales tax upon the transactions here

in question, in absence of congressional action, would not infringe the authority conferred upon Congress.

■ We do not agree with commission's contention determination of taxability of sales involved requires that we first settle when title to the goods passed to Dodgen's customers. Commission's assertion title to property does not pass until delivery may be correct as a general proposition. However, time of passing title is only one incident of the sale and not decisive whether the tax imposed exceeded constitutional limitations. As tending to support our position see United States v. Swift & Co. (7 Cir., 1903), 122 F. 529, 531–532, a case heavily relied upon by the trial court. However, we do not believe this case reaches the question presented under the first issue, stated supra.

VI. The trial court's opinion that the legislature did not intend the sales tax statute to reach transactions in interstate commerce does not fully present the remaining issue as to validity of this tax assessment. The question is whether the sales transactions here involved were intended to be taxed under section 422.43 of the sales tax law.

Dodgen contends it is the intent and purpose of the Iowa sales and use tax laws to reach retail sales to Iowa consumers and users and protect Iowa business concerns, not to place them at a competitive disadvantage in interstate commerce. They argue that a tax statute which would place these business concerns at such disadvantage would be unsafe, unwise and not to the best interest of the state. Citing Peoples Gas & Elec. Co. v. State Tax Comm., 238 Iowa 1369, 28 N.W.2d 799, and Dain Mfg. Co. of Iowa v. Iowa State Tax Comm., 237 Iowa 531, 22 N.W.2d 786.

■ Taxing statutes are strictly construed against the taxing body—liberally in favor of the taxpayer. It must appear from the language of the statute the tax assessed against taxpayer was clearly intended. Morrison-Knudsen Company, Inc. v. State

Tax Comm., 242 Iowa 33, 36, 44 N.W.2d 449, 451, 41 A.L.R.2d 523, and authorities cited therein.

In support of its contention Dodgen directs attention to this language in Peoples Gas & Elec. Co. v. State Tax Comm., supra, 238 Iowa at 1372, 28 N.W.2d at 802:

"Protection of the Iowa seller is in fact protection of the sales tax. If he is forced out of business or deprived of part of his business by the imposition of a tax that does not reach his out of state competitors, the revenue is lost to the state of Iowa."

It argues revenue lost also results in loss of Iowa income tax, loss of employment, which means loss of income tax on employees' wages, and loss of income to the businesses they patronize with resulting loss of sales and income tax from the purchases the employees would have made, surely such was never the intent of the legislature.

In further support of its argument that these tax laws were not intended to penalize Iowa business, Dodgen quotes this from Dain Mfg. Co. of Iowa v. Iowa State Tax Comm., supra, 237 Iowa at 534, 22 N.W.2d at 788:

"The tax serves the double purpose of producing revenue that otherwise might not be available and of furnishing some measure of protection of Iowa dealers from competition with outside vendors not subject to liability for sales tax."

In each case provisions of Code chapter 423 were being considered. This does not detract from the force of the quoted language as support for Dodgen's argument. "Our decisions have been careful to point out that the use-tax law is supplementary to the sales-tax law and protects Iowa dealers who must collect and pay a sales tax by placing them on a tax equality with competing out-of-state vendors whose sales are not subject to the sales tax." Morrison-Knudsen Company, Inc. v. State Tax Comm., supra, 242 Iowa at 38, 44 N.W.2d at 452. Dodgen's argument assumes the legislature had a similar intent when enacting the sales tax law.

The parties stipulated, Dodgen made sales, among others, to purchasers who reside in Minnesota and Nebraska, neither of which had sales or use taxes at the time; and there are competing manufacturers engaged in the same business as Dodgen who are residents of states which impose no sales tax on similar transactions. Dodgen's argument continues, thus it must compete against sellers of such states in their home states and in states foreign to both, going in with a two (and now three) percent disadvantage if these and similar sales by Dodgen are taxed by the state of Iowa. Moreover, if the buyer's home state hereafter enacts a use tax law thereby taxing this kind of transaction, as they may rightly do, the Iowa business is forced to compete faced with a double tax as opposed to a single tax imposed on competitors residing in buyer's home state, or in foreign states not imposing the sales tax on this kind of sale.

Code section 422.43 provides in part:

"There is hereby imposed, * * * a tax of two percent upon the gross receipts from all sales of tangible personal property, * * * except as otherwise provided in this division, sold at retail in the state to consumers or users; * * *"

The Sixty-second General Assembly amended this provision, increasing the tax to three percent.

Section 422.42(2) provides:

" 'Sales' means any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration."

Section 422.42(3) provides in part:

" 'Retail sale' or 'sale at retail' means the sale to a consumer or to any person for any purpose, * * *"

Tax Commission, I.D.R., 55, provides:

"Sales in interstate commerce—goods shipped from this state. When tangible personal property is sold within the state and the seller is obligated to deliver it to a point outside the state or to deliver it to a carrier or to the mails for transportation to a point without the state, the retail sales tax does not apply, provided the property is not returned to a point within this state. The most acceptable proof of transportation outside the state will be:

"(a) A waybill or bill of lading made out to the seller's order calling for delivery; or

"(b) An insurance or registry receipt issued by the United States Postal Department, or a Post Office Department's receipt; or

"(c) A trip sheet signed by the seller's delivery agent and showing the signature and address of the person outside the state who received the delivered goods.

"However, where tangible personal property is sold and delivered in this state to the buyer or his agent other than a common carrier, the sales tax applies, notwithstanding the fact that the buyer may subsequently transport the property out of the state."

The first portion of this rule does not tax interstate sales when delivery is to a carrier or to the mails for transportation. The last portion taxes interstate sales if delivery is to the buyer or his agent other than a common carrier.

Dodgen asserts there is no qualification as to how property is transported into Iowa when it is subject to the use tax; and there should be no qualification as to means of transportation when the transaction is in reverse and the property is transferred out of Iowa.

We do not agree. To rule that where a sale is made in Iowa it is not subject to a sales tax merely because the item purchased is to be taken to another state, would open an avenue to easy avoidance of the tax by the customer simply declaring his intention to take the purchase elsewhere if proof of transportation to a point without the state was not required by one of the methods provided by this rule. Such a determination would provide a basis for charging tax to some customers and not others; would give rise to untold mischief in administration and to extensive loss to the state of revenue to which it is entitled.

When the legislature enacted the sales tax law, it is fair to assume they were aware that these and similar methods might be used to avoid payment of the tax and had fully considered force of similar economic arguments as Dodgen has advanced in this cause.

We are also aware of the force of this argument and its ramifications. These must be counterbalanced with the unlimited problems of administration that would result from sustaining the trial court. It is our opinion the sales transactions here involved were intended to be taxed under section 422.43.

For a decree consistent with this opinion the matter is—

Reversed and remanded.

All Justices concur.